BRINKER–JOHNSON COMPANY and Walter W. Johnson, Appellants,

v.

Wendell B. BARNES, Administrator, Small Business Administration, Appellee.

No. 14889.

United States Court of Appeals Ninth Circuit.

Oct. 30, 1959.

Walker Lowry, San Francisco, Cal., for appellant.

Crimins, Kent, Draper & Bradley, John L. Bradley, Martin Lalor Crimmins, Sam J. Whiting, Jr., San Francisco, Cal., for appellee.

Before HEALY, ORR and CHAMBERS, Circuit Judges.

ORR, Circuit Judge.

We had this case previously and a majority of the court concluded that it was a matter for the consideration of the Court of Claims and therefore ordered it dismissed. A petition for rehearing was filed. We ordered that action on the petition be held in abeyance until the Court of Claims acted. That order had the effect of causing the action to still pend before this Court. The Court of Claims recognizing this very properly under the applicable law dismissed the petition before it.

After the dismissal by the Court of Claims we granted the petition for rehearing. The case has been reargued and submitted on the merits.

Appellants are seeking recovery of certain interest payments to the Recon-

struction Finance Company, hereafter R.F.C., on a loan made to it by R.F.C. The Small Business Administration has been substituted as party defendant as the successor to the R.F.C.

Brinker-Johnson Co. was organized for the purpose of operating certain mining claims in Alaska containing ore carrying gold values. The company was unable to finance the operation without financial assistance and made application to R.F.C. to secure the needed funds. In 1941 the R.F.C. granted a loan of $250,-000. The money was deposited with certain banks as trustees for the use of appellants. Withdrawals were made subject to the approval of an R.F.C. representative. The loan was secured by twenty-five interest bearing notes of $10,000 each. The terms of the loan limited the use of the borrowed funds to the development and exploitation of the Alaska mine. The receipts from the operation after expenses were to be deposited with the trustee banks to be applied against the indebtedness due R.F.C. The obligation to pay was not limited to receipts from the operation of the mine; there was also a pledge of appellants' general credit.[1]

The mining property was supplied with the necessary machinery and equipment to permit it to become operational and operations were carried on in 1941–1942, and were suspended in October 1942 pursuant to an order of the War Production Board L–208, 7 F.R. 7992 which closed all gold mining operations in the United States and its Territories, said Board deeming gold mining an industrial activity incapable of contributing to the war effort and in competition with defense production for labor and materials. From October 1942 to July 1, 1945, when order L–208 was lifted, appellants' mining operations were suspended. During the period interest was

---

1. Art. 1V, § 3 of the indenture provides that "notwithstanding anything in this Article or elsewhere in this Indenture contained to the contrary or which might be deemed to be to the contrary, each of the Notes shall constitute a joint and several promise by Trustors to make payment absolutely and unconditionally, and not out of a particular fund, of the sums specified in such Note, in accordance with the terms thereof."

accruing on the $250,000 loan. Apparently for the purpose of securing finances for the resumption of operations appellants made a second application for a loan of $50,000 to R.F.C. This loan was granted and an indenture executed.

Appellant has by its pleadings raised several reasons why it should recover from the government the interest it paid during the time it was forced to suspend operations by reason of War Production Order L–208.

▉▉ The trial court in effect found that whether or not appellants may have had ground for recovery of the disputed interest before receiving the $50,000 additional loan, by the instrument in writing appellants executed to obtain the $50,000 loan, they expressly agreed to pay the interest which they seek to recover. The trial court made a finding to that effect. We have in mind that the finding of a trial court based upon documentary evidence does not carry the same degree of conclusiveness on us as does one made upon oral evidence, but from an examination of the indenture executed by the parties in furtherance of the second loan we think the finding of the trial court is substantially supported.

Our understanding of the situation is that appellants are anxious to resume operations, need money to do so, and are willing to make concessions to get it. R.F.C. is anxious to secure the payment of its original loan and interest and will make an additional loan solely for the purpose of facilitating that payment, so the following provisions are inserted in the indenture:

"That in consideration of the premises and the advances made or to be made by RFC to Trustors * * * and in order to secure payment of and *interest on all of said notes secured by the First Indenture* according to their respective terms and all other indebtedness, however represented, provided for in said First Indenture, * * * Mortgagor and Brinker-Johnson have mort-

gaged, granted, * * * all of the following property. * * *

"To Have and to Hold all and every part of said Trust estate * * to secure payment of the Note and interest thereon, to additionally secure payment of the notes issued under the First Indenture * * * *to secure payment of the Notes and interest thereon secured by said First Indenture.* * * *

"After payment in full of the Note and interest thereon and all other sums due under this Indenture *and all sums due under said First Indenture* * * * the Trust fund shall be dissolved. * * *

"By the execution of the Indenture * * * Borrowers agree that the said Indenture shall constitute an agreement whereby the payments of Note 1 to 18, inclusive, secured by the first Indenture shall thereby be deemed to be extended to July 1, 1946, *together with all interest due thereon.*" (All emphasis supplied.)

We construe this language to mean that all accrued interest would be paid for the full period that the notes were outstanding and that appellants know or should have known that such was the agreement and was in part the consideration for the $50,000 additional loan. The fact that appellants waited some four years before requesting waiver of the interest in question lends some support to the conclusion that it understood it was to pay all accrued interest.

Appellants urge that to hold that appellants agreed to pay the interest accrued during the time of the "shutdown" could only be based on waiver and that waiver is an affirmative defense and must be pleaded which was not done. We do not so understand the action taken. Rather than a waiver appellants' agreement to pay all interest was based on a reaffirmance to pay for an adequate consideration, viz. the making of the $50,000 loan.

Judgment affirmed.